UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| STEPHEN WARREN,<br><br>          Plaintiff,<br><br>     vs.<br><br>AUSTIN EUGENE LINDSEY et al.,<br><br>          Defendants. | 3:13-cv-00333-RCJ-VCF<br><br>**ORDER** |

This case arises out of an allegedly false report of theft.  Pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 110).  For the reasons given herein, the Court grants the motion.

I.      **FACTS AND PROCEDURAL HISTORY**

In October 2010,[1] Plaintiff Stephen Warren made a verbal agreement with Defendants Austin and Deborah Lindsey to rent, and later purchase, a fifth wheel trailer (the "Trailer") from the Lindseys. (Third Am. Compl. ¶¶ 3–4, 8, ECF No. 85).  Plaintiff and his daughter, on whose behalf Plaintiff also brings the present suit, took possession of the trailer, put their personal property into it, and began living in it in the City of Carlin, Nevada (the "City"), paying the Lindseys $400 per month, pursuant to the agreement, for ten months. (*Id.* ¶¶ 9–10).

---

1 Plaintiff has alleged the agreement was entered into in October 2011, but that is probably a typographical error, as the relevant subsequent events are alleged to have begun during the spring of 2011.

On June 13, 2011, Plaintiff, with Lindsey's knowledge (Plaintiff does not allege which Lindsey), took the Trailer to California to secure financing for the purchase. (*Id.* ¶ 11). On June 15, 2011, Lindsey (Plaintiff does not allege which Lindsey) reported to the Sheriff of Elko County that Plaintiff had stolen the Trailer. (*Id.* ¶ 12). Plaintiff was current on his rent payments at the time. (*Id.* ¶ 12.1). In the police report, Lindsey (Plaintiff does not allege which Lindsey), stated that he had loaned the Trailer to a friend but did not disclose his agreement with Plaintiff or that he knew why Plaintiff had taken the Trailer to California. (*Id.* ¶ 12.2).

On June 23, 2011, Warren was arrested by the Monterey County Sheriff in California due to the police report filed in Nevada. (*Id.* ¶ 13). The sheriff released Plaintiff later that day. (*Id.*¶ 13.1). Defendant William Bauer, the Chief of Police of the City caused a "hold" to be placed against the Trailer through NCIC, a national crime reporting and registration network. (*Id.* ¶¶ 6, 13.2). The "hold" caused the Monterey County Sheriff's Department to seize the Trailer, as well as Plaintiff's possessions therein, without a warrant. (*Id.* ¶ 13.3–13.4). Bauer told the Monterey County Sheriff that he was processing a criminal complaint against Plaintiff. (*Id.* ¶ 14.1). The Elko County District Attorney expedited a criminal arrest warrant, and on January 19, 2012, Plaintiff was arrested in California based on a warrant for felony theft issued in Nevada. (*Id.* ¶¶ 14.2, 15). As a result, Plaintiff was incarcerated for twenty-one days and extradited to Elko County, Nevada, when he was granted bail. (*Id.* ¶ 15.2). On July 3, 2011, Bauer instructed the Monterey County Sheriff's Department to release the Trailer to Defendant Foremost Insurance Co. Grand Rapids Michigan ("Foremost"). (*Id.* ¶ 16).

Once the Elko County authorities confirmed, on or about November 26, 2012, that Plaintiff had a verbal agreement with Lindsey to rent and purchase the Trailer, they dropped the charges against him. (*Id.* ¶ 17). Plaintiff believes that the Lindseys submitted a claim to Foremost based on the alleged theft of the Trailer, that Foremost paid the Lindseys for the

alleged loss, and that Foremost then took possession of the Trailer from the Monterey County Sheriff's Department because it believed itself to be subrogated to the Trailer. (*Id.* ¶¶ 18–19). At some unknown time thereafter, Foremost caused the Trailer, and Plaintiff's possessions therein, to be sold by unknown means to unknown persons for an unknown price. (*Id.* ¶ 20).

The Third Amended Complaint ("TAC") lists eight claims: (1) malicious prosecution (Lindsey); (2) intentional infliction of emotional distress ("IIED") (Lindsey); (3) conversion (Lindsey and Foremost); (4) abuse of process (Lindsey); (5) defamation (Lindsey); (6) breach of contract (Lindsey); (7) violation of the Fourth Amendment under 42 U.S.C. § 1983 (Bauer and the City); and (8) violation of Nevada Revised Statutes section ("NRS") 179.105 (Bauer and the City).[2] The Lindseys and Bauer have separately filed counterclaims for equitable indemnity and contribution, arguing that Plaintiff in fact stole the Trailer. Bauer and the City have now moved for summary judgment.

## II.   LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

---

2 The Court has separated claims seven and eight differently from how Plaintiff has separated them in the TAC, because the alleged Fourth Amendment violation is different from the alleged state statutory violation, and only the former may be prosecuted via § 1983. Plaintiff had grouped the claims together under claim seven and listed claim eight as a separate *Monell* claim against the City.

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. ANALYSIS

#### A. The Fourth Amendment Claim

Even where there has been a constitutional violation, individuals are entitled to qualified immunity unless the state of the law at the time of the violation was clear enough that a reasonable person in the defendant's position would have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court has discretion to analyze the qualified immunity issue before addressing whether there was a violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (citation omitted; alterations in *Ashcroft*). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In its discretion, the Court analyzes the issue of the constitutional violation first and finds there to be no genuine issue of material fact that there was none. Plaintiff's allegations that the

Lindseys had reported the Trailer stolen to Bauer are an admission on the face of the TAC that there was probable cause, and Plaintiff adduces no contrary evidence. In the absence of suspicious circumstances known to the officer, a non-anonymous report of the theft of a particular piece of property by a particular person is sufficient without more to cause a reasonable officer to believe that there is a fair probability that the accused committed the theft under the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Bauer attests that Austin Lindsey, whom he had never met, reported the theft to him on June 15, 2011. (*See* Bauer Aff. ¶ 6–8, ECF No. 110-1). Lindsey reported that Plaintiff was a mechanic Lindsey had hired at Dale White Motors in Elko, that Lindsey had loaned him the Trailer as a temporary residence, and that on June 13, 2011, Plaintiff had called in sick to work and failed to appear at work on June 14, 2011. (*Id.* ¶¶ 9–12). One of the other mechanics had told Lindsey that Plaintiff's rented trailer space at Yorkshire Villas Trailer park was empty, and that he had seen Plaintiff fueling up at 3:00 p.m. on June 13, 2011 with the Trailer in tow. (*Id.* ¶ 13). Bauer contacted the Wells Rural Electric Co. and discovered that Plaintiff had left owing them money. (*Id.* ¶ 17). Bauer contacted the U.S. Post Office in Carlin on June 23, 2011 and confirmed that Plaintif had closed his post office box as of June 17, 2011 and left a forwarding address of a post office box in Aromas, California. (*Id.* ¶ 18). On June 23, 2011, Bauer called the Monterey County Sheriff's Department and asked if they could assist in locating the Trailer, which they did within half an hour, taking Plaintiff into custody. (*Id.* ¶¶ 20–21). Bauer then decided to make a warrant application for Plaintiff's arrest. (*Id.* ¶ 22). These facts, if uncontested at trial, would entitle Bauer (and therefore the City as to a *Monell* claim) to summary judgment on the issue of probable cause to cause the arrest of Plaintiff and the seizure of the Trailer.

Plaintiff provides no evidence in opposition tending to show that Bauer had knowledge of Plaintiff's alleged permission to take the Trailer to California. The excerpt of Bauer's deposition

testimony does not contradict his affidavit but in fact indicates additional investigation undertaken by Bauer that confirmed that Plaintiff had left without notice, i.e., he had left the trailer park owing them money, as well, and his daughter was absent from school without notice. (*See* Bauer Dep. 11, ECF No. 121-1).  All of the evidence before Bauer indicated that Plaintiff had stolen the Trailer.  Taking all of the evidence he had at that time together, the conclusion that Plaintiff had stolen the Trailer was not only reasonable but practically compelled.  And as Bauer correctly noted in response to a hypothetical question by counsel, the fact, if known to him, that Plaintiff had been paying rent for the Trailer would by itself have little bearing on whether Plaintiff had stolen the Trailer under the circumstances. (*See id.* at 16).  Bauer noted that if Lindsey had told him that Lindsey had received a phone call from a bank indicating that Plaintiff was at the bank negotiating financing for the Trailer, it would have affected his decision on how to proceed.  But there is no evidence adduced that Bauer was aware of that alleged phone call to Lindsey.  Finally, the report of the police practices expert is unhelpful.  What does and does not constitute a Fourth Amendment violation is not a question on which expert opinion is helpful.  As the Court of Appeals for the District of Colombia has aptly noted, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to [determine] the relevant legal standards." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D. C. Cir. 1997).  Bauer and the City are entitled to summary judgment on the Fourth Amendment claim.

    **B.**    **The NRS 179.105 Claim**

The statute reads in its entirety:

> All property or things taken on a warrant must be retained in an officer's custody, subject to the order of the court to which the officer is required to return the proceedings before the officer, or of any other court in which the offense in respect to which the property or things are taken is triable.  If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant

> was issued, the magistrate shall cause it to be restored to the person from whom it was taken. However, no search warrant shall be quashed by any magistrate or judge within this State nor shall any evidence based upon a search warrant be suppressed in any criminal action or proceeding because of mere technical irregularities which do not affect the substantial rights of the accused.

Nev. Rev. Stat. § 179.105 (1967). On its face, the statute appears to require injunctive relief in appropriate circumstances, but Plaintiff alleges that Bauer and the City no longer have the Trailer or its contents (and, in fact, that they never had them, but that the Monterey County Sheriff's Department did), and the statute does not appear to create any action for damages. The Nevada Supreme Court has only cited to the statute once, in an unpublished case that may not be cited as legal authority and for a proposition not at issue here. The Court perceives no intent by the Nevada Legislature to create a private right of action via this statute. Also, as Defendants note, § 1983 provides this Court jurisdiction over claims of violations of federal law, not claims of violations of state law. *Ove v. Gwinn*, 264 F.3d 817, 824–25 (9th Cir. 2001). In any case, the Court has adjudicated the probable cause issue against Plaintiff, *supra*.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 110) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Leave to File Excess Pages (ECF No. 111) is GRANTED.

IT IS SO ORDERED.

Dated this 10th day of February, 2015.

_____
ROBERT C. JONES
United States District Judge