# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

STEPHEN WARREN,

    Plaintiff,

vs.

AUSTIN EUGENE LINDSEY et al.,

    Defendants.

3:13-cv-00333-RCJ-VCF

**ORDER**

This case arises out of an allegedly false report of theft.  Pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 133).  For the reasons given herein, the Court grants the motion in part.

## I.    FACTS AND PROCEDURAL HISTORY

In October 2010,[1] Plaintiff Stephen Warren made a verbal agreement with Defendants Austin and Deborah Lindsey to rent, and later purchase, a fifth wheel trailer (the "Trailer") from the Lindseys. (Third Am. Compl. ¶¶ 3–4, 8, ECF No. 85).  Plaintiff and his daughter, on whose behalf Plaintiff also brings the present suit, took possession of the trailer, put their personal property into it, and began living in it in the City of Carlin, Nevada (the "City"), paying the Lindseys $400 per month, pursuant to the agreement, for ten months. (*Id.* ¶¶ 9–10).

---

1 Plaintiff has alleged the agreement was entered into in October 2011, but that is probably a typographical error, as the relevant subsequent events are alleged to have begun during the spring of 2011.

On June 13, 2011, Plaintiff, with Lindsey's knowledge (Plaintiff does not allege which Lindsey), took the Trailer to California to secure financing for the purchase. (*Id.* ¶ 11). On June 15, 2011, Lindsey (Plaintiff does not allege which Lindsey) reported to the Sheriff of Elko County that Plaintiff had stolen the Trailer. (*Id.* ¶ 12). Plaintiff was current on his rent payments at the time. (*Id.* ¶ 12.1). In the police report, Lindsey (Plaintiff does not allege which Lindsey), stated that he had loaned the Trailer to a friend but did not disclose his agreement with Plaintiff or that he knew why Plaintiff had taken the Trailer to California. (*Id.* ¶ 12.2).

On June 23, 2011, Warren was arrested by the Monterey County Sheriff in California due to the police report filed in Nevada. (*Id.* ¶ 13). The sheriff released Plaintiff later that day. (*Id.* ¶ 13.1). Defendant William Bauer, the Chief of Police of the City caused a "hold" to be placed against the Trailer through NCIC, a national crime reporting and registration network. (*Id.* ¶¶ 6, 13.2). The "hold" caused the Monterey County Sheriff's Department to seize the Trailer, as well as Plaintiff's possessions therein, without a warrant. (*Id.* ¶ 13.3–13.4). Bauer told the Monterey County Sheriff that he was processing a criminal complaint against Plaintiff. (*Id.* ¶ 14.1). The Elko County District Attorney expedited a criminal arrest warrant, and on January 19, 2012, Plaintiff was arrested in California based on a warrant for felony theft issued in Nevada. (*Id.* ¶¶ 14.2, 15). As a result, Plaintiff was incarcerated for twenty-one days and extradited to Elko County, Nevada, when he was granted bail. (*Id.* ¶ 15.2). On July 3, 2011, Bauer instructed the Monterey County Sheriff's Department to release the Trailer to Defendant Foremost Insurance Co. Grand Rapids Michigan ("Foremost"). (*Id.* ¶ 16).

Once the Elko County authorities confirmed, on or about November 26, 2012, that Plaintiff had a verbal agreement with Lindsey to rent and purchase the Trailer, they dropped the charges against him. (*Id.* ¶ 17). Plaintiff believes that the Lindseys submitted a claim to Foremost based on the alleged theft of the Trailer, that Foremost paid the Lindseys for the

alleged loss, and that Foremost then took possession of the Trailer from the Monterey County Sheriff's Department because it believed itself to be subrogated to the Trailer. (*Id.* ¶¶ 18–19). At some unknown time thereafter, Foremost caused the Trailer, and Plaintiff's possessions therein, to be sold by unknown means to unknown persons for an unknown price. (*Id.* ¶ 20).

The Third Amended Complaint ("TAC") lists eight claims: (1) malicious prosecution (Lindsey); (2) intentional infliction of emotional distress ("IIED") (Lindsey); (3) conversion (Lindsey and Foremost); (4) abuse of process (Lindsey); (5) defamation (Lindsey); (6) breach of contract (Lindsey); (7) violation of the Fourth Amendment under 42 U.S.C. § 1983 (Bauer and the City); and (8) violation of Nevada Revised Statutes section ("NRS") 179.105 (Bauer and the City).[2]  The Lindseys and Bauer separately filed counterclaims for equitable indemnity and contribution, arguing that Plaintiff in fact stole the Trailer.

Bauer and the City moved for summary judgment, and the Court granted the motion, finding that there was no genuine issue of material fact that Bauer had probable cause to believe the trailer had been stolen based on the information available to him at the time.  Plaintiffs, Bauer, and the City have stipulated to dismiss all of their claims and counterclaims.  The Lindseys have now moved for summary judgment as against claims 1–6.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

---

[2] The Court has separated claims seven and eight differently from how Plaintiff has separated them in the TAC, because the alleged Fourth Amendment violation is different from the alleged state statutory violation, and only the former may be prosecuted via § 1983.  Plaintiff had grouped the claims together under claim seven and listed claim eight as a separate *Monell* claim against the City.

there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d

1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   ANALYSIS

The Lindseys have adduced sufficient evidence to negate the claim that Austin Lindsey knew the Trailer was not stolen when he reported it stolen to Bauer on June 15, 2011. First, Austin Lindsey has attested as to not knowing of or approving Stephen Warren's taking the Trailer to California, but that when Warren texted Lindsey on June 14, 2011 indicating that the Trailer was in Palisade, Nevada, Lindsey told him to return it or he would report it stolen; the communication then stopped. (*See* Lindsey Dep. 18–21, Nov. 12, 2013, ECF No. 133-3, at 2). He first found out the Trailer had been taken to California when Bauer called him to report it had been located. (*See id.* 43). Second, Lindsey has adduced a video recording of Warren's admission to the Monterey County Sheriff's Office that he had not told Lindsey he was going to take the trailer to California before he did so or before Lindsey reported it stolen. (*See* Ex. 7, ECF No. 133, manually filed).

The Lindseys have therefore satisfied their initial burden on defensive summary judgment as to whether Lindsey reported the Trailer stolen when he knew it was not. This negates each of the six claims against the Lindseys. The malicious prosecution, abuse of process, and defamation claims fail because each requires a false statement or report or a

wrongful motive for filing one.  Intentional infliction of emotional distress cannot be shown, because it is not outrageous to make a police report based on facts one reasonably believes to be true.  The conversion claim fails because, even assuming the Lindseys proximately caused the taking of the Trailer (and the Warrens' possession therein) by others via the police report, the report was not wrongful.  The Lindseys did not exercise wrongful dominion over the Trailer.[3]  The breach of contract claim fails because the Lindseys cannot be said to have wrongfully broken the contract to rent (or purchase) the Trailer by reasonably reporting it to have been stolen.

The Court finds, however, that the Warrens have adduced evidence sufficient for a jury to find that Lindsey knew when he reported the Trailer stolen to Bauer on June 15, 2011 that Warren had not in fact stolen the trailer.  There is one piece of evidence adduced that could be interpreted as showing that Warren in fact told Lindsey in May 2011, approximately two weeks prior to leaving, that he was going to take the trailer to California to arrange financing to purchase it.  (*See* Warren Dep. 104–06, June 27, 2014, ECF No. 147-7).  Warren testified that Lindsey had approved leave for Warren, and that (whether he told this to Lindsey or not) the purpose of the leave was for Warren to go to California to deal with certain past affairs.  (*See id.* 104:7–12).  When asked whether Lindsey knew Warren would be taking the Trailer with him to California, he testified, "He knew that.  I couldn't get finance anywhere else." (*Id.* 104:16–17).  This is not evidence that Warren told Lindsey he would be removing the Trailer but that Lindsey should have inferred it based on Lindsey's past knowledge that Warren thought he could only get financing in California, which also assumes Lindsey knew that one purpose of the trip was for Warren to get financing on the Trailer, which the testimony does not show.  Later, however,

---

3 Foremost has not moved against this claim, and the Court states no opinion as to Foremost's liability for conversion of the Warrens' personal property inside the Trailer.

Warren testifies fairly explicitly that he told Lindsey in late May 2011, two weeks before his departure, that he would take the Trailer to California to get financing. (*See id.* 105:9–106:23). The remaining evidence adduced by the Warrens either concerns Lindsey's knowledge of the trailer having been taken to California as of June 21 or 22, 2011 (which is not relevant as to whether he had that knowledge when he made his police report on June 15, 2011) or Lindsey's own claims that he never knew of or approved Warren taking the trailer to California (which evidence supports the Lindseys). Although Warren's videotaped statements in 2011 appear to contradict his 2014 deposition testimony, this is an issue of credibility for trial. In summary, the Warrens have satisfied their shifted burden on summary judgment to show a genuine issue of material fact as to whether Lindsey knew when he reported the Trailer stolen to Bauer on June 15, 2011 that Warren had not in fact stolen the trailer. That evidence is enough for jury to determine several of the claims in Plaintiffs' favor.

The Court, however, grants summary judgment against the IIED and abuse of process claims. The Warrens have adduced no evidence to show any objectively verifiable physical manifestation of emotional distress nor any physical impact obviating the need for such a pleading. *See, e.g., Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev.1998) ("[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented."). Nor is there any evidence to show a misuse of legal process separate from the criminal proceedings; the proper claim here, which will proceed to trial, is malicious prosecution.

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 133) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated this 1st day of June, 2015.

_____
ROBERT C. JONES
United States District Judge